May it please the court, James Feiff, a federal defender, is appearing for the appellant, Mr. Tiznado. I'll try to reserve two minutes for a moment. The district court made multiple errors at sentencing in this alien smuggling case, but I'd like to focus on just two of them, the substantial risk enhancement and the supervised release. There was no clear and convincing evidence, as defined in Rodriguez and Rodriguez-Cruz, for recklessness as to the substantial risk. Rodriguez, which is a case which I alerted the court in a supplemental citation, says that recklessness is something more than just knowledge of the facts from which one can infer the existence of the risk. But that's exactly the only thing that the district court relied on, the only thing that the government, at least on appeal, has argued. They never argued it below. They conceded that there was no substantial risk. Rodriguez argues that recklessness requires proof of actual and subjective awareness, right? Correct. And don't we have that here? Don't we have the previous unsuccessful smuggling experiences? Doesn't that reflect that he was subjectively aware of the risk presented by smuggling aliens through the mountains during the summer? What more would you require to show subjective awareness? Your Honor, the only facts that we have, I would point out there were four incidents that were considered by the court. In fact, the court aggregated all of them for an enhancement. That was proper. That was not proper, Your Honor, but I won't get into that unless we have plenty of more time. But all the facts, the specific facts that are known about any of those incidents all come from the last crossing. Things like location, the type of terrain, the weather. Those are all things that we only know details about from the last crossing. There are no details about any of those regarding any of the previous three crossings. There's no information whatsoever. Similar terrain, similar area. It's not as if they were coming at different points along the southern border. Well, we don't know, Your Honor, because all we know, in fact, it's not even clear from the PSR. And, in fact, all of this information comes from the pre-sentence report, pages 4 to 7 of the pre-sentence report. And that's one of my questions is I want to know what standard of review we're supposed to be looking at this from, because it doesn't look like you objected to the facts in the PSR. Your Honor, there's nothing wrong with the facts that are in the PSR. The question is the legal conclusion, whether they amount to sufficient, clear, and convincing evidence. All right. So where, because I noted in your sentencing memorandum you encouraged or asked the court to decline not to consider doing an adjustment for four people. It was 11, which the court found. Eleven people. And then also I thought you did the same thing for the substantial risk. That's correct. And so do you think that's sufficient for an objection and for us to apply an abuse of discretion, or is that plain error? I'm just trying to figure it out. Your Honor, absolutely. Under the rules of federal criminal procedure, Rule 51B, the general rule is if you make a motion for a particular type of relief, in this case for a particular sentence, the court denies it, you've preserved it for plenary review. I think you answered my question, because you say you don't object to the facts. You're objecting to the law that the district court used in making those adjustments. That's correct. The claim on appeal is that those did not constitute clear and convincing evidence, which is necessary to support the substantial risk enhancement in this case. How many levels upward was it? It resulted in a six-level increase and a doubling, over-doubling of the low end of the guideline range that would result. So under the Jordan factors, that would suggest that this would be clear and convincing. In fact, most of the cases that I've pointed to, Rodriguez, another one which I didn't cite, which I would like to mention, the court Garden Hire, a 2015 case that dealt with recklessness in regards to pointing a laser pointer at an aircraft. There's very interesting discussion there about what's required to show recklessness, and very much in the same vein as Rodriguez, that there just wasn't evidence here to show that there was a prior awareness. The only details we have is this is simply a sufficiency argument. There simply wasn't anything about the details about where the crossings, the previous crossings, occurred. We don't even know for sure, based on what's in the PSR, that they were even in the Southern District of California. We just simply know that these crossings were reported. We don't know whether they were in the desert, whether they were walking up a highway. We don't know where the crossings occurred. What we do know is that this defendant had prior experiences, prior experiences that included people who may have died because there was inadequate supplies, and that had happened on more than one occasion. That's incorrect, Your Honor, and I disagree with that, because he didn't even know about the death of Mr. Palacios until after his arrest in the final crossing. He didn't know about the death, so he had no way of knowing about the deadliness of this type of crossing. Moreover, there was nothing to show that he was involved in the provisioning of this, and that he knew what was needed for crossing. He was a neophyte. He'd been doing this for one month. One of the four trips that he made was a training trip where he was just tagging along and shadowing the others. So he's not someone who has a lot of responsibility. In fact, there's no information about who did have the responsibility. Is responsibility a requirement to be aware if you're on the trip? Well, Your Honor, it's required because he has to be the cause of the risk. Or a cause. A cause, Your Honor, or at least we would think that maybe at least that he has some kind of major or approximate cause of the risk. Because, as you point out, why would he put himself in danger, right? Exactly, Your Honor. And what we know if he wanted to. But he's in a different situation than those folks are. Not really, Your Honor. He's in a better position to take precautions and make sure that there is enough for them to safely make the trip. We don't know that, Your Honor, because we don't know he was working for somebody else. He was working for El Pato. He was not the person that was necessarily in control of that. He was getting paid to lead these folks. He was being paid, Your Honor. You're ignoring that. He had the responsibility for providing the supplies for them. In fact, I would point to the incident of that particular crossing with Mr. Palacios. That's really significant. Because what happened is that the wife and the brother-in-law reported that when Mr. Palacios was going to reign behind, they gave their supplies to Mr. Palacios. That is, they gave up two-thirds of their crossing, of the aliens they were crossing, gave up their supplies. What that indicates, number one, is that each person in the party had control over their supplies. The guides, the foot guides, had no control over it. They gave it up. Second, that means that that wouldn't clue anybody into that you didn't have enough supplies to cross with, because two-thirds of your party gave them up and left them behind. The important thing is there's no — What other conclusion would you draw? The problem is, Your Honor, there's not enough clear and convincing evidence to draw any reasonable conclusion, because for one main reason, we just don't know how much water and food they took with them when they started out. We don't know. They could have had 10 gallons of water each. We just don't know. So how can the court say that you didn't take reasonable precautions, you didn't show reasonable care? And remember, under Rodriguez, you have to show a gross deviation from the standard of care, that we have no idea whether or not they could have all had the proper amount of water, but then the actual aliens themselves overconsumed it, spilt it. They ran out of water. That's what we know. We don't know who caused it and whether that cause was done recklessly or intentionally. Judge Gould, did you have any questions? I have no questions. Did you object to the standard of release argument that your three-year term of release? Yes, Your Honor, exactly, because the court said absolutely nothing. This case is no. The question was. Did you object? Oh, did I object? Oh, no, sorry, no, there was no objection. So that's plain error. Well, the court, well, defense counsel did know, because the defense counsel says, I am making, I am accepting to the procedural and substantive reasonableness of the sentence to preserve my record. The district court, Judge Moskowitz said, okay, right. And that's all that was needed. That's all that's needed because. Even though, let me finish, please. Okay. Even though the pre-sentence report disclosed a three-year sentence, the government noted it, defense counsel never said boo about supervised release, and it immediately followed the court giving a high-end range of a sentence with statements that would support a three-year term of supervised release.  The closest case we can look at is one that you and I are very familiar with, Valdovinos-Torres, where, of course, the court found, because the court had made an explicit reference to the need for deterrence, that the policy statement and the guidelines didn't apply here. Here the judge said absolutely nothing, and when we look at the facts of the case, this was a defendant who had a reduced, a much lower risk of recidivism, of the need to deter, than many people. And certainly no reason to deter him from illegal reentry. Thank you. Thank you, Your Honor. May it please the Court. Daniel Zip on behalf of the United States. Your Honor, the district court was within its discretion in applying a substantial risk enhancement in this case. The undisputed facts in the PSR showed that on the date that the defendant was arrested, he had taken a group of aliens on a three-day hike through the extreme heat of the mountains without sufficient water. I've got those, and if you don't mind, you've just heard your opponent say that wasn't enough, that there needed to be more facts, that not enough was known about the other trips. How do you respond? There was enough known about the other trips, and it's listed in the PSR. Most critically, there was the previous trip where one of the aliens died. As outlined in the PSR in that case, this defendant led a group. They ran out of food and water, left one of the aliens behind. And when did the defendant learn of that death in relation to the charge in this case? Well, there's two separate sections in the PSR that discuss that. One of them, immediately after he was arrested, he told the agents that he knew that Mr. Palacios had died on the intervening alien smuggling event, in other words, the one before the subject of this sentencing. Then later, when he had an interview with the PSR, with the probation officer, he sort of backtracked and said he didn't know that he had died, but he sort of had a strong suspicion that he had died. I mean, either way, this was someone – he knew what condition Mr. Palacios was in when he left him in the mountains. The three weeks or four weeks then passed, and he was reported as a missing person. He knew that Mr. Palacios had died, and that's what he told the agents. So to then depart on the same sort of three-day trek through the mountains in the extreme heat, again without sufficient food or water, it's – So what do we have to determine here, whether or not there was clear – I mean, do you agree we have to show – we have to determine whether or not there was enough to support the district court's decision that there was substantial risk that had been presented in those – in the current circumstance and the prior circumstance, and that the defendant here knew about it? And we have to do that by a clear and convincing standard? No, Your Honor. The standard for this court to review what the district court did is abuse of discretion. I know, but the district court had to find clear and convincing evidence to support his decision. Yes. Okay. And so it may be a little bit repetitive, but where's the clear and convincing evidence for the district court to support that in these decisions? Because he's not making just the determination on the current offense that he was brought in on, but on the prior relevant conduct that you all were asserting. Is that right? Am I understanding that right? No, Your Honor, not on the substantial risk. The court says on this August 30th event alone, and then proceeds to list the fact that it was in extreme heat, it was a three-day hike, and they ran out of water. That – putting aside what happened before, that is enough. Certainly under an abuse of discretion standard, it wasn't implausible or illogical for the judge to say that those facts are enough to apply this – That that was clear and convincing evidence in this incident. Yes. In fact, that tracks almost identically with the application note to the section that says leading someone without sufficient food and water is by definition meets the – And so that's why I just – I wanted to get it clear for myself. So this prior relevant conduct, because I thought that's what the defense counsel was arguing, is that he was being held – the defendant here was being held accountable for prior relevant conduct with respect to number of persons involved and then to conditions on the prior event. Tell me what the situation is. I think that the prior incidents go towards his subjective knowledge of the risk, but just the August 30th event alone, those factors were sufficient for the court on an abuse of discretion standard to find an enhancement applied here. On the supervised release conditions, the defendant never objected specifically to the judge's explanation for why it was imposing a three-year term of supervised release. This court in Valencia, Barragan, said that essentially you have – you can't just make a general procedural objection like the defendant did here. If the problem was that the court wasn't explaining itself, then it's incumbent upon the defense attorney to alert the judge to that fact. And in this case, the court imposed the three-year term of supervised release immediately after highlighting that the key fact at sentencing was deterring future criminal conduct by this defendant. So defense has not shown that it was a plain error to impose a within-guidelines supervised release term in this case. Happy to answer any other questions. And what's our standard of review for – Do you think the objections were made by defense counsel at the time regarding all of these issues? On the supervised release, they only gave sort of a generalized procedural objection, and that's not sufficient under this Court's case law. So it would be plain error on the three-year term of supervised release, abuse of discretion on the guidelines calculations. I have one question for you. The district court relied on U.S. v. Rodriguez-Cruz to support applying the substantial risk enhancement in this case because, as you've noted, the August 30 group was ill-equipped for their journey. Rodriguez-Cruz had an extensive evidentiary hearing with factual findings about the group's lack of preparedness. And I think my concern and your opponent's argument is that this case is distinguishable from Rodriguez-Cruz. Your response? Your Honor, I would just say that the facts in the PSR were straightforward and they were unobjected to. And they show that this defendant led a group of aliens on a three-day hike through the mountains in the extreme heat without sufficient water. That's enough under the almost identical language in the guidelines for the Court to imply the enhancement here. It certainly wasn't illogical or implausible under an abuse of discretion standard for the Court to imply the enhancement. Thank you. Thank you, Your Honors. Thank you. I'll give you one minute. I just want to make one factual correction. I know counsel wasn't the one who wrote the briefs, and maybe he's not familiar with the facts here. But, in fact, Mr. Tisnato never admitted or claimed or said to anyone that he knew that Mr. Palacios has died. In fact, he's the one that found out only after he arrested, and then he broke down very remorseful about this. So he's not someone that knew about it, or no one knew that he died until three days after his second arrest. But he kind of knew he was missing and didn't know what happened, and maybe he died. Well, he learned at that time that they were looking for him. That's it. It could be that he got into the United States and he had disappeared into the population. We don't know whether he made it. So the important thing about the crossing, the circumstance of the crossing, I point the court again to the commission's reason for amendment. When they added that language to the guideline, they noted the Fifth Circuit case Garza and specifically said this is narrowing the scope of this case and that you don't consider all these generic things about terrain and general geographic conditions as being sufficient to make this kind of showing. And finally, on the supervised release, I wanted to point out, I pointed to a Third Circuit case of Zonka Polanco, which clearly, and I think there's Ninth Circuit law as well that points out that when you apply the supervised release to a deportable alien, that's a question of substantive reasonableness. The counsel did make an objection under substantive reasonableness, and in fact, anyways, that's fully preserved in any case. If the court imposed a, as the Third Circuit said, imposed this on a deportable alien without sufficient justification and deterrence, that is a substantively unreasonable sentence. This court has the ability to review that under plenary review. Thank you very much. Thank you, Your Honor. Thank you both for your arguments here today. The United States of America v. Carlos Duznal, the Valenzuela case is submitted.
judges: Gould, Murguia, Zouhary